IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TEZOPS LLC AND | § | |
| QUEST RESOURCES LLC, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil No. 3:19-CV-01288-E |
| v. | § | |
| | § | |
| QUANT SYSTEMS INC. AND | § | |
| SRINIVAS VEERAVELLI, | § | |
| | § | |
| Defendants. | § | |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' Motion to Dismiss Plaintiffs' Complaint (Doc. 13). Upon review of the complaint, motion to dismiss, Plaintiffs' response, and Defendants' reply, the motion is granted in part and denied in part for the following reasons.

Plaintiffs Tezops, LLC and Quest Resources, LLC have filed a complaint against Defendants Quant Systems, Inc. and Srinivas Veeravelli. As alleged by Plaintiffs, Plaintiffs' claims arise out of an alleged agreement between them and Defendants to share the profits from provision of technology services to third parties, "Ominto Inc./Dubli Inc." ("Ominto"). Plaintiffs allege that Raman Singh is a "partner/member" of both Tezops and Quest. They also allege that Defendant Quant is the alter ego of Defendant Veeravelli. In February 2016, Singh and Veeravelli began negotiating a profit-sharing agreement based on Singh's introduction of Ominto to Veeravelli. According

1

to the complaint, "The parties desired to work together to provide technology services to Ominto Inc./Dubli Inc., and to equally share the profits from this business endeavor." In April 2016, "the parties" executed a Memorandum of Understanding (MOU) documenting the material terms of their agreement. Plaintiffs allege that as memorialized in the MOU, Plaintiffs and Defendants agreed to share all profits and equity from provision of technology services to Ominto 50%/50%. They also agreed to form an LLC named Quantnow through which the technology services would be provided.

At some point, Ominto asked that the parties' services be provided pursuant to a series of "Statements of Work" or "SOWs" with Quant, rather than through Quantnow, as contemplated in the MOU. On March 13, 2016, Ominto and Quant entered into a SOW, which designated Singh as the Project Director Manager/Executive. Two months later, Ominto and Quant entered into an addendum to that SOW. Singh was still designated as Project Director. Singh resigned as Project Director in October 2016, but the parties still wanted to maintain their profit-sharing agreement. On October 28, 2016, "the parties" entered into a Master Consulting Agreement (MCA), which further memorialized "that Plaintiffs' consulting services, business expenses, and profit/equity-sharing fees would be compensated by Defendants."

From March 2016 to December 2017, Defendants provided services to Ominto, earning about $1.3 million in profits. Plaintiffs also provided services to Ominto during that time. According to the complaint, Defendants

initially paid Plaintiffs shared profits. But, without explanation, Defendants failed to remit to Plaintiffs approximately $513,000 in additional payments and Plaintiffs' share of the equity Defendants obtained from Ominto.

The MOU and the MCA are attached to Plaintiffs' complaint. The complaint alleges that Singh is an intended beneficiary of both the MOU and the MCA. Plaintiffs allege both documents expressly contemplate securing benefits for Singh. Singh, however, is not a Plaintiff in this case.

Plaintiffs allege seven counts or causes of action. Specifically, Plaintiffs assert claims for breach of contract/covenant of good faith and fair dealing (Count I), fraudulent misrepresentation (Count II), open/sworn account (Count III), account stated (Count IV), quantum meruit (Count V), money had and received (Count VI), and accounting (Count VII).

Defendants have moved to dismiss Plaintiffs' complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). To survive such a motion, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court takes well-pleaded factual allegations in the complaint as true, but does not credit conclusory allegations. *Chhim v. Univ. of Tex. at Austin*, 336 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678). A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable

for the misconduct alleged. *Id.* In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to plaintiff. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

Plaintiffs' first count is for "Breach of Contract/Covenant of Good Faith and Fair Dealing." Their breach of contract claim is based on a profit-sharing agreement that was "oral and memorialized in writings, which were signed by Defendants or the authorized representative(s) of Defendants." Plaintiffs rely on the MOU and the MCA. But neither Plaintiff is a named party to the MOU. The MOU is between "Srini & co (Quant systems)" and "Raman & co." It is signed by Singh as President of "Raman & co," and Veeravelli as CEO of "Srini & co." Plaintiffs fail to explain how they can sue on a contract to which they are not a party and thus have not pleaded a plausible claim for breach of the MOU.

The MCA is between Defendant Quant and Plaintiff Tezops. Plaintiff Quest is not a party to the MCA. Nor is Defendant Veeravelli. Again, Plaintiffs fail to explain how Quest can sue on a contract to which it is not a party. Further, Plaintiffs have not alleged facts which support a claim against Veeravelli individually for breach of contract. The officers of a corporation are not personally liable for breach of a contract between a corporation and a third party. *See Covington v. Aban Offshore Ltd.*, 650 F.3d 556, 558–59 (5th Cir. 2011). Plaintiffs allege that Quant is the alter ego of Veeravelli. They

assert that "corporate and individual property has been commingled, the corporation has been used for personal purposes, and/or corporate formalities have not been followed." But no factual allegations have been made to support this conclusory statement. Plaintiffs fail to plausibly allege an alter ego theory.

Nor has Plaintiff Tezops stated a claim for breach of the MCA against Defendant Quant. Plaintiffs generally allege Defendants failed to pay them under a profit-sharing agreement. Plaintiffs allege Defendants breached "the agreement" by refusing to timely pay monies owed to Plaintiffs and to provide documentation for Plaintiffs to confirm the amounts owed. The MOU mentioned profit sharing, but Plaintiffs have not alleged how or in what provision the MCA included a profit-sharing provision.

To the extent that Plaintiffs allege an oral contract existed between the parties, they have not alleged facts to support the existence of one. In determining the existence of an oral contract, courts look to communications between the parties and to acts and circumstances surrounding the communications. *Thornton v. Dobbs*, 355 S.W.3d 312, 316 (Tex. App.—Dallas 2011, no pet.). The complaint merely alleges that the "profit-sharing agreement was oral and memorialized in writing." This conclusory statement about an oral agreement is not supported by any factual allegations. The complaint does not describe any oral communications related to contract formation.

Next, Defendants contend Plaintiffs have not stated a claim for breach of the covenant of good faith and fair dealing. Texas law does not impose a generalized contractual duty of good faith and fair dealing and, in fact, rejects it in almost all circumstances. *Hux v. S. Methodist Univ.*, 819 F.3d 776, 781 (5th Cir. 2016). A special relationship may give rise to such a duty, but only in an extremely narrow set of circumstances. *Id.* In the absence of a formal fiduciary relationship, the duty may exist if the parties are in a special or confidential relationship. *Id.* The relationship must exist before and apart from the contract or agreement that forms the basis of the controversy. *Id.* The special relationship is earmarked by specific characteristics, including a long-standing relationship, imbalance of bargaining power, and significant trust and confidence shared by the parties. *Id.* A party's unilateral sense of trust and confidence in the opposing party is not sufficient to give rise to a special relationship. *Id.* Texas courts have recognized only one special relationship, that between an insurer and insured. *Id.*

Plaintiffs' complaint alleges they and Defendants were in a special relationship with fiduciary characteristics, which existed prior to "the Agreement." They allege Defendants had superior knowledge to Plaintiffs regarding Defendants' actions in obtaining profits and equity from Ominto. Plaintiffs relied upon Defendants' representations that Defendants would comply with the parties' agreement. These conclusory allegations are insufficient to establish a special relationship.

In their response to the motion to dismiss, Plaintiffs suggest that a formal fiduciary relationship existed between the parties because they were "joint adventurers." Plaintiffs' complaint does not expressly allege the existence of a joint venture or its requirements. *See Liserio v. Colt Oilfield Servs. LLC*, No. SA-19-CV-1159-XR, 2019 WL 6168208, at *4 n.6 (W.D. Tex. Nov. 20, 2019). Plaintiffs fail to establish either a fiduciary relationship or a special relationship between the parties. They have not plausibly alleged a claim for breach of the duty of good faith and fair dealing.

Plaintiffs also assert a claim for fraudulent mis-representation/concealment. Plaintiffs allege Defendants "materially represented that they would perform under, and pay half of the profits and equity due under, the parties' agreement described above." Further, they contend "Veeravelli repeatedly promised Singh, by email and orally, throughout February 2016 to December 2017 that he personally would ensure full performance and payment." The complaint alleges Defendants had a duty to disclose to Plaintiffs information about the profits and equity Defendants gained as a result of the relationship with Ominto and that they had no intention of fulfilling their agreement obligations and paying Plaintiffs the amounts due in profit and equity-sharing.

Defendants contend Plaintiffs' fraud claims should be dismissed. When a plaintiff alleges fraud, Federal Rule of Civil Procedure 9(b) requires that the circumstances constituting fraud be stated with particularity. *Lampkin v.*

*UBS Fin. Servs. Inc.*, 925 F.3d 727, 733 (5th Cir. 2019). To meet this standard, "the who, what, when, and where must be laid out." *Id.* The only allegation that comes close to meeting this requirement is Plaintiffs' contention that "Veeravelli repeatedly promised Singh, by email and orally, throughout February 2016 to December 2017 that he personally would ensure full performance and payment" under the parties' agreement. Plaintiffs allege an injury or loss that was the subject of the parties' alleged contract. Such an action sounds in contract alone. *See LAN/STV v. Martin K. Eby Constr. Co.*, 435 S.W.3d 234, 242 & n.35 (Tex. 2014). As alleged, Plaintiffs' fraudulent misrepresentation/concealment claim arises from an alleged breach of contract and is thus precluded by law.

Plaintiffs' third count is for an open/sworn account. The elements of a suit on a sworn account are: 1) the sale and delivery of good or services; 2) the charges on the account are just; and 3) the amount remains unpaid. *Solano v. Syndicated Office Sys.*, 225 S.W.3d 64, 67 (Tex. App.—El Paso 2005, no pet.). Plaintiffs do not allege facts showing they provided goods or services to Defendants. Their complaint alleges that they and Defendants provided technology services to *Ominto* and agreed to share the profits. Plaintiffs have not stated a plausible claim for a sworn account against Defendants. *See Union Pac. R.R. v. Innovative Logistics Servs.*, No. Civ. A. H-03-5434, 2005 WL 2597379, at *4 (S.D. Tex. Nov. 3, 2005).

Plaintiffs' fourth count is for account stated. They allege the parties had an express and enforceable agreement. Plaintiffs allege they rendered "professional services" to Defendants. Defendants were sent demands, each setting the unpaid balance and charges for services rendered, and the demands remain unpaid. The sum owed is $513,112.

To prove an account stated claim, a plaintiff is required to show: (1) transactions between it and the defendant giving rise to an indebtedness; (2) an agreement, express or implied, that fixed the amount due; and (3) defendant made an express or implied promise to pay. *Walker v. Citibank, N.A.*, 458 S.W.3d 689, 692 (Tex. App.—Eastland 2015, no pet.). Plaintiffs' conclusory allegations do not establish the elements of an account stated claim. They allege they rendered services to Defendants. The complaint does not allege what services Plaintiffs provided to Defendants or show that there were transactions between the parties giving rise to an indebtedness.

Plaintiffs also pleaded a claim for Quantum Meruit. They assert that, to the extent the parties' written agreements are not enforced, Plaintiffs still provided professional services to Defendants. Defendants acquired profits and equity from the client, but did not make full payment to Plaintiffs. Defendants agreed to pay them the reasonable value of their services.

Quantum meruit is an equitable remedy that is "based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted." *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 732 (Tex. 2018).

The purpose of this common-law doctrine is to prevent a party from being "unjustly enriched" by retaining the benefits of the performance without paying anything in return. *Id.* To recover under a quantum meruit claim, a claimant must prove that: (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) those services and materials were accepted by the person sought to be charged, and were used and enjoyed by him; and (4) the person sought to be charged was reasonably notified that the plaintiff performing such services or furnishing such materials was expecting to be paid by the person sought to be charged. *Id.* at 732–33. Plaintiffs' description of professional services rendered to Defendants is conclusory. They allege they introduced Ominto to Defendants' representatives and "performed services." Further, they seek damages of at least $513,112, which is the same amount they seek for their share of profits and equity. They fail to explain how the value of the services they provided to Defendants is the same as the amount they seek under the profit-sharing agreement for services rendered to Ominto. Plaintiffs have failed to state a plausible quantum meruit claim.

Next, Plaintiffs allege a claim for money had and received. Plaintiffs allege that because of their services, Defendants received money from Ominto, at least $513,112 of which was intended to be used for Plaintiffs' benefit. Defendants have not given such money to Plaintiffs.

A cause of action for money had and received is equitable in nature. *Edwards v. Mid-Continent Office Distrib., L.P.*, 252 S.W.3d 833, 837 (Tex. App.—Dallas 2008, pet. denied). The claim "belongs conceptually to the doctrine of unjust enrichment." *Id.* A cause of action for money had and received is "less restricted and fettered by technical rules and formalities than any other form of action. It aims at the abstract justice of the case, and looks solely to the inquiry, whether the defendant holds money, which . . . belongs to the plaintiff." *Id.* To prove the claim, a plaintiff must show that a defendant holds money which in equity and good conscience belongs to him. *Id.*

Defendants contend Plaintiffs' claim for money had and received is barred because there is an express contract between the parties. But Defendants dispute that Plaintiffs are parties to a valid contract. Under these circumstances, Plaintiffs can assert an alternative claim for money had and received. *See Cole v. Benavides*, 481 F.2d 559, 561 (5th Cir. 1973). Defendants' motion to dismiss is denied as to this claim.

Finally, Plaintiffs assert a claim for an accounting. They allege that the amount due to them from Defendants can only be ascertained by an accounting. An action for an accounting may be a suit in equity, or it may be a particular remedy sought in conjunction with another cause of action. *Williams v. Chase Home Fin. LLC*, No. 3:13-CV-1307-G, 2014 WL 4707543, at *11 (N.D. Tex. Sept. 22, 2014). An accounting sought in equity is proper when

11

the facts and accounts presented are so complex that adequate relief may not be obtained at law. *Id.* To the extent Plaintiffs assert an equitable claim for an accounting, their allegations are insufficient to state such a claim with plausibility. There are no allegations that either the facts or the account at issue are complex, or that Plaintiffs cannot obtain the accounting information through discovery.

For the foregoing reasons, the Court grants Defendants' motion to dismiss in part and denies the motion in part. It is denied as to Plaintiffs' claim for an account had and received and granted as to all other claims. Rather than dismiss Plaintiffs' claims with prejudice, the Court will allow Plaintiffs to file an amended complaint within 30 days from the date of this order. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 329 (5th Cir. 2002) (court should allow plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, "unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal").

**SO ORDERED**.

Signed March 23, 2020.

_____
ADA BROWN
UNITED STATES DISTRICT JUDGE